UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:23-CR-00013-02** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JAMICHAEL D IGNONT (02)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

On June 17, 2024, Defendant Jamichael Ignont ("Jamichael") was sentenced to 240 months imprisonment followed by a period of three years of supervised release. There were three objections made by Jamichael [Doc. Nos. 191, 205], all of which were **DENIED** by this Court at his sentencing hearing. This Ruling sets forth written reasons for the Court's denial of the three objections.

Jamichael plead guilty to Conspiracy to Possess with Intent to Distribute Heroin in violation of Title 21 U.S.C. § 841(b)(1) and (b)(1)(c) on February 14, 2024.

**A.     OBJECTION NO. 1**

In his first objection, Jamichael argues he should not be held responsible for the quantity of drugs found at 135 Blackwood Drive, Monroe, Louisiana. A substantial amount of methamphetamine and heroin were found at 135 Blackwood Drive, which was searched pursuant to a search warrant that was executed on December 13, 2022.[1] Jamichael was held responsible for 578 grams of marijuana, 2,199.74 grams of heroin, and 8,772.45 grams of methamphetamine, all of which were seized at the 135 Blackwood Drive residence.[2]

---
[1] [Doc. No. 216, pp. 30-33].
[2] [Doc. No. 216, p. 37].

Jamichael does not dispute being held responsible for 224.47 grams of methamphetamine involving three controlled buys, 10.8 grams of heroin seized at 104 Palmwood Drive, or for 1,482 grams of heroin and 16.362 pounds of marijuana seized at the Dallas-Fort Worth ("DFW") airport.[3]

Under USSG 1B1.3(a)(1)(B)(viii), a defendant is held responsible only for "all acts and omissions of other that were….reasonably foreseeable in connection with (jointly undertaken) criminal activity." A defendant may be held accountable for drug quantities that the defendant was not personally involved with if the drug quantities were reasonably foreseeable to the defendant and within the scope of the criminal activity that the defendant agreed to undertake. *U.S. v. Jones*, 965 F.2d 1507, (8th Cir. 1992), rehearing denied, cert. denied. 113 U.S. 346, 113 U.S. 439, 113 U.S. 2418.

Although the residence at 135 Blackwood Drive was occupied by Laneython Ignont ("Laneython"), the residence was actually owned by Jamichael.[4] The residence at 135 Blackwood Drive was only a short distance from where Jamichael lived, 104 Palmwood Drive.[5]

Jamichael was charged in Count Two of the Indictment with conspiracy with intent to distribute heroin, along with Laneython and Shawn Stansbury.[6] In the Stipulation in Support of Guilty Plea,[7] Jamichael stipulated that he conspired with Laneython and others to possess with intent to distribute heroin. He also stipulated that during the interpretation of cell phone communications, Jamichael and Laneython discussed selling illegal drugs.

Jamichael also stipulated that he was caught at the DFW airport with a suitcase containing 1,249 grams of heroin. Jamichael also stipulated that analysis of Jamichael's cell phone seized at

---

[3] Id.
[4] Id.
[5] [Doc. No. 216, p.7].
[6] [Doc. No. 40].
[7] [Doc. No. 161-2].

the airport showed that Jamichael had been on the phone with Laneython at the time of his arrest. Additionally, Jamichael stipulated that, after Jamichael's arrest at the DFW airport, law enforcement officers intercepted a call where Laneython discussed Jamichael's arrest at the airport, and that he, Laneython, had paid for the drugs that had been lost due to seizure at the DFW airport.

The drugs seized at the DFW airport were flat, rectangular bricks of heroin, wrapped in brown tape with three yellow strips. Similar wrapping was used in heroin seized at 135 Blackwood Drive.[8] Jamichael was video recorded selling drugs from a bronze Jaguar SUV, which was registered to Jamichael, but was parked outside of the 135 Blackwood Drive residence.[9] Jamichael also stipulated to responsibility for the heroin located at 135 Blackwood Drive (Laneython's residence).

Additionally, the investigative materials showed Jamichael sold methamphetamine on December 15, 2021, and December 29, 2021.[10] The investigative materials also showed Laneython sold methamphetamine out of Jamichael's car on January 27, 2022,[11] and Laneython sold methamphetamine outside of Jamichael's residence on August 30, 2022.[12] During the investigation, narcotics agents stationed a pole camera in front of 104 Palmwood Drive, and video footage from the pole camera indicated lots of activity associated with narcotics sales from Jamichael's residence.[13]

Based upon this information, it was reasonably foreseeable to Jamichael that Laneython would store large amounts of heroin, methamphetamine, and marijuana at 135 Blackwood Drive. The evidence showed Jamichael was significantly involved in Laneython's drug operation by

---

[8] [Doc. No. 21, p.6].
[9] Id.
[10] [Doc. No. 216, pp. 11-12].
[11] [Doc. No. 216, p. 13].
[12] [Doc. No. 216, p. 16].
[13] [Doc. No. 216, p. 34].

purchasing and selling drugs for Laneython. The residence Laneython stored the drugs was owned by Jamichael.

Objection No. 1 is **DENIED.**

### B.      OBJECTION NO. 2

In his second objection, Jamichael contends he should have been given an adjustment for a mitigating role pursuant to USSG 3B.1.2, which provides for a decrease to the offense level depending on the defendant's mitigating role in the offense. To receive a mitigating adjustment, a defendant must be a minimal participant, a minor participant, or somewhere in between. The burden of proof is on the defendant. *United States v. Silva-DeHayes*, 702 F.3d 843, 846 (5th Cir. 2012).

Jamichael has not met that burden. Jamichael was significantly involved in the conspiracy. He bought and sold drugs for the drug conspiracy. The primary leader of the conspiracy, Laneython, lived in a house owned by Jamichael.

Objection No. 2 is **DENIED.**

### C.      OBJECTION NO. 3

In his third objection, Jamichael contends he should not have received a 2-level enhancement for possession of a firearm pursuant to USSG 2D.1.1(b)(1). To be enhanced by two levels, a dangerous weapon must have been possessed. Comment n.11A states this enhancement reflects the increased danger of violence when drug traffickers possess weapons and should be applied if the weapon were present, unless it was clearly improbable the weapon was connected to the offense (example given of an unloaded hunting rifle, stored in a closet).

When Jamichael's home at 104 Palmwood was searched, three dangerous weapons were found. A DPMS rifle, model A-15; caliber 223-5.56mm, loaded with 223 rounds of ammunition

was found in a laundry closet; a Hi-Point C-9 9mm pistol loaded with one round was found in the couch in the living room; and a Lorcin L25 caliber .25 pistol, with seven rounds of ammunition, was also found in a laundry closet. Further, 10.80 grams of heroin were found at 104 Palmwood.

It is not clearly improbable that the three firearms found were connected to the offense.

Objection No. 3 is **DENIED.**

**CONCLUSION**

For the reasons set forth herein, and in accordance with the Court's Oral Ruling at the Sentencing hearing,

**IT IS ORDERED** that the Objections [Doc. Nos. 191, 205] filed by Jamichael Ignont are hereby **DENIED.**

MONROE, LOUISIANA, this 24th day of June 2024.

TERRY A. DOUGHTY
**UNITED STATES DISTRICT JUDGE**

5